[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action finds its genesis in a fall at the Cumberland Farms, Inc. store located at 577 Chase Avenue in Waterbury on January 31, 1997. The plaintiff was shopping as a business invitee upon the defendant's premises. On that date, she proceeded to the large refrigerator to purchase water and proceeded to fall over a tray which an employee apparently had left in the aisle, causing her to sustain certain personal injuries. It appears to be the practice of Cumberland Farms, like many other convenience stores, to receive particular commodities such as bread and discover that the shelves are filled with other items and, therefore, cannot accommodate the full order of a particular substance. She acknowledges that she saw several trays stacked one on top of the other, each holding up to nine (9) loaves. However, she did not see an additional tray beyond that stack and that was the object over which she fell. The injuries that she claimed initially were a strain or sprain of her lumbar spine; a strain or sprain of her knee; and pain and suffering, both mental and physical.
The lady is thirty-five years old, married, unemployed until recently, but was taking courses for "graduation or certification," as the case might be. She now appears to be employed on a part-time basis with the Department of Children and Families. She is of Hispanic origin, which is significant only because of the language difficulty, and was accompanied by an outstanding interpreter who had some difficulty translating her testimony because of her tendency to ramble somewhat and a lack of specificity in some of her answers. The injuries that she suffered, as mentioned, were to her left knee and her back, and she alleges that the pain was instantaneous and extremely severe. She also alleges that she lay on the floor thrashing and calling for help that never came. The then-manager of the Cumberland Farms store thought he heard something, but what he heard, according to the interpretation of what he said, was not sufficient to investigate. The lady left the store and entered the vehicle being operated by her husband. Whether he went into the store and advised the manager of her injuries or not at that time is disputed.
On that same day, January 31, 1997, her husband took her to see her family physician, Dr. Manuel Nunes, who diagnosed an injury to her left knee, observed a superficial abrasion thereon, and notes that the knee was slightly swollen and tender. He referred her to Dr. Glenn Taylor, an orthopedic surgeon, who noted significant limping. In addition, she complains of low back area pain arising out of the injury to her knee, as she tried to explain it. An MRI indicated a bone bruise of the tibial plateau with no evidence of injury to any cartilage. As a result of her CT Page 7957 complaints, his diagnosis was a low back strain, in addition to the injury to her knee. He recommended diagnostic arthroscopy which she and her husband refused.
Dr. Taylor referred her to Dr. Arlen Lichter, a board certified physical medicine and rehabilitation physician. Complaints there continued to involve low back without radiation, according to the physician, and her left knee. She was evaluated in terms of permanent partial disability by Dr. Lichter who awarded her a five (5) percent permanent partial impairment of the lumbar spine as well as a seven (7) percent permanent partial impairment of the left knee as a result of the fall.
In accordance with Dr. Lichter's recommendation, she was again seen by an orthopedic physician, a Dr. Michael J. Kaplan, on December 23, 1999. Her history indicates that the pain which she experienced had worsened some since the fall and she had swelling that bothered her occasionally at night. The physical examination, according to Dr. Kaplan, "shows exquisite tenderness over the medial aspect of the proximal tibia which was consistent with pes bursitis." He diagnosed a bone bruise over the proximal medial tibia from the accident, and he recommended an injection which she declined. He finally rated her as of that date at a five (5) percent permanent partial disability as a result of her accident, did not recommend surgery and then recited that it would be unlikely she ever undergo surgery. It was interesting to note a comment of a Dr. Duffy who conducted an independent medical examination. He recites that "she has considerable difficulty answering questions asked." He also mentioned that "she rambles on describing her pain and in answering every question," and that "treatment to date appears to have been necessary. Proper diagnostic imaging studies were obtained. Although treatment was protracted in duration, there does not appear to be overutilization of services provided. He opined that there was no permanent partial impairment of her lumbar spine and that she did have a three (3) percent permanent partial impairment of the left lower extremity as a direct result of the injury. He predicated the finding on the knee based on the objective findings reported on the MRI of February 26, 1997.
Her damages consist of the following charges for services rendered:
(1) Greater Waterbury Imaging Center $1900.00
(2) Manuel Nunes, M.D. 550.00
(3) Glenn Taylor, M.D. 554.00
(4) Arlen Lichter, M.D. 3365.95 CT Page 7958
(5) Rebound Physical Therapy 203.00
(6) Waterbury Hospital 114.42
(7) Michael Kaplan, M.D. 439.00
The total of those special damages is seven thousand one hundred twenty-six dollars and thirty-seven cents ($7126.37). The ultimate assessment of permanent partial disability is five (5) percent to the left knee; and while Dr. Lichter offered an opinion that there was a five (5) percent permanent partial impairment of the lumbar spine, the court chooses to accept the opinion of Dr. Kaplan, as opposed to that of Dr. Lichter, and awards her a five (5) percent permanent partial disability of the left knee only.
Throughout the course of her testimony, the plaintiff complained vigorously about the quality of pain she was suffering and the continued discomfort she experienced. She did not use the word "excruciating," but it would appear as though that is what she was trying to communicate. The court has some difficulty in accepting that. She was very uncomfortable and she did have pain, but the degree to which she described it and the frequency of it are found to be exaggerated.
The court further finds that the defendant was indeed negligent in its failure to warn the plaintiff of the hazardous condition that existed in the aisle, in its failure to close off that aisle while those impediments to passage were there, and in its failure to remove the empty tray next to the stacked trays on the side of the aisle. It also finds that the plaintiff was indeed contributorily negligent. It would appear as though she was inattentive and failed to use her senses to the degree required of a reasonable person under the same or similar circumstances. It finds the extent of her contributory negligence to be twenty-five (25) percent. It further finds that her economic damages are seven thousand one hundred twenty-six dollars and thirty-seven cents ($7,126.37). The court also finds permanence and certainly some pain and inconvenience, although not to the extent described by the plaintiff, and awards an additional thirty-nine thousand ($39,000) dollars non-economic damages. The application of her own contributory negligence reduces the award to thirty-four thousand five hundred ninety-four dollars and seventy-eight cents ($34,594.78). Therefore, it finds that the plaintiff is entitled to recover the sum of thirty-four thousand five hundred ninety-four dollars and seventy-eight cents ($34,594.78), together with the costs of suit. Judgment may enter accordingly.
Moraghan, J.T.R.